Good morning ladies and gentlemen we are here to hear the scheduled re-hearing on Bonk case of Taylor versus Cate. As you can see Judge Gould is appearing by video. How are you Judge Gould? I'm fine thank you. You can hear us I assume? I can hear you perfectly. And I'm sure it's a spectacular day in Seattle? Nice cloudy skies. You may proceed with your argument. Mr. Chief Judge and this panel, may it please the Court, Kurt Hermanson on behalf of Ronald Taylor. Your Honors, in this case it's a unique case where the verdict was set aside. The argument of the dissent and of the Attorney General is that there was no verdict. But the heart and soul of the verdict was that Mr. Taylor was the shooter. And when that was taken away, when an actual innocence finding was made, there was no verdict. But he didn't argue innocence of the crime. He might have been not the shooter but he was still there and it was a felony murder and therefore he could have argued I suppose but did not that he was actually innocent of murder. Well he did all along because right then in, so the crime was in 87 and the timeline shows that really there's no windfall to him. The windfall all these years since 97 has been to the State. At the new trial motion he told the judge, Your Honor I'm not here to say I wasn't there, I was there. But he could have said at the time, didn't he, that couldn't he, that he was not the shooter? He said I am not the shooter, Your Honor, and But he knew who the shooter was and he could have at the trial used that defense. But he did not. Yes, and he invoked his right to remain silent and he is invoking his right to have a jury decide whether or not he was guilty. Mr. Hermanson, the problem I have with your position is the jury found him guilty of attempted robbery and a murder occurred during the robbery. Why is he not guilty of felony first degree murder under California law for which he was properly sentenced to life in prison? He was found both, there are two special verdicts, both find that he was the shooter. So his role. Doesn't matter. Under California substantive law, if a death occurs during the commission of an attempted robbery, you are guilty of felony murder whether you pulled the There are only two ways that he could be guilty. Either he was the shooter or he was an aider and abetter. So the jury found he was the shooter, which was, is mutually, 100 percent inconsistent with finding that he But they also found him guilty of attempted robbery. As the shooter. Well, maybe. There's no maybe, Your Honor. The jury was instructed that they could find him guilty either as a principal or as an aider and abetter, and the evidence is clear that the other person in the robbery actively assisted in the robbery by tripping or obstructing the flight of the waitress who was trying to run for help. We dispute that, and his statements to the court, his statements to the prosecutors who wrote letters to the California Department of Corrections saying, we believe he was not the shooter, we are convinced he was not the shooter, we have investigated this case post-trial, and we believe he's not the shooter. He admits he was there, so therefore he had to have been the other man. They told him over and over again. Yes, that's correct. But the other man denied aiding and abetting, and they told him over and over again. You don't think that the evidence shows that the other man actively assisted in the robbery by preventing the flight of the witness who was running for help? That will be for a subsequent jury to find. No, I don't believe that. Counsel, that's in his petition, S.E.R. 88 to 89, that he went in, Hayes was taking too long, he didn't know where the gunshots were coming from, he saw a woman, but he pushed her to the floor. He has that in his petition. He collided with her. His statements in the 54-page transcript when they met with him at the prison and interviewed him was that he collided with her and she fell to the ground. She was running and he was going toward her into the kitchen. She came running out of the kitchen, they collided, and she fell. I was just reading from the his petition, actually. His testimony at the preliminary hearing, I mean, his testimony at the preliminary hearing was they collided, his position all along has been that they collided, not that he tackled her or pushed her. And he collided with her and then he fled. Yes, they both fled together. But his, what he told them all along and what he testified to was that at the preliminary hearing was that he went there to the Pioneer Chicken and that his cohort was going to go to the bathroom. And they were casing joints. I mean, he, and they told him, the DA and the DA investigator and the detective said, we don't want 99.9% accuracy. You have to be completely truthful to us if we're going to consider using you as a witness. What do we do with the fact that he stole the vehicle that was used as a getaway car and drove the vehicle after the robbery? Isn't that sufficient to find aiding and abetting under California law? No, that would be accessory after the fact or, and it's not aiding. I've heard before. No, aiding and abetting. If the vehicle was stolen after casing the robbery location in preparation to aid the getaway, that is aiding and abetting the robbery, is it not? That's like supplying the gun that's going to be used in the robbery. No, aiding and abetting has. That's not aiding and abetting liability? Am I misunderstanding California substantive law? Yes, Your Honor. Aiding and abetting has three requirements. The first and four with this, he would have to be the aider and abetter. That's, that undermines any possibility that, because under California law. My question, if you steal a car that you're going to use in the commission of a robbery and thereafter drive it as a getaway, is that insufficient under California law to constitute aiding and abetting a robbery? Yes. He would have to have the specific intent of the principal. The principal has to have the intent to go to the Pioneer Chicken, not just any random place, go to the Pioneer Chicken to rob that place. But he said he was casing places for robberies, and then they went to the Pioneer Chicken, and he admits that he was there. And he says that when they went to the Pioneer Chicken, it was to go to the bathroom. So there's, I mean, what we're talking about is, and what you're honing in on is sufficiency of the evidence. This is not a sufficiency of the evidence case. This is What I'm honing in on is the fact that in order to find him guilty of felony murder, the jury had to find, first, that an attempted robbery occurred, and secondly, that a death occurred during the commission of the robbery. And there's lots of evidence to show that he was actively involved in the robbery. So I'm trying to see how it is fundamentally unfair to re-sentence him, as the State did, to life in prison with the possibility of parole. The focus of, whether it's structural error or harmless error, the focus of every court is on the verdict. We do not ignore jury verdicts. We do not erase jury verdicts. If this court were to find that a judge can replace a jury verdict, it would be the first time in history that we can do the erase and replace procedure. A directed verdict would be the result. No case allows that. When the If the court had granted a motion for judgment of acquittal on the shooter aspect of the case and simply sentenced him for felony murder on the attempted robbery, would that have been okay? Well, the judge didn't do that. Well, counsel, it's a hypothetical question, so answer my hypothetical. If the judge had, and he did make two motions. He made a motion for a new trial and a motion to at least set aside the special verdicts. And if the court had done that, would it have been proper for the judge to sentence him as a felon who committed a murder during commission of a robbery? Or who was present when? No, because it would, I think, there again, it would go to the heart of the jury's verdict. The judge would be setting aside the entire verdict. But counsel, you did move for judgment NOV as to the special circumstances. Which was denied. Right. But you asked the judge to knock out the special circumstances and leave the guilty verdict in place. That's exactly what the California Supreme Court ordered the trial court to do here. How can you fault the California Supreme Court for effectively ordering what you asked the trial court to do in the first place? I didn't ask them to do that. Mr. Taylor's attorney in the alternative asked for that lesser. Okay. Well, not you personally, but your side. Mr. Taylor asked the trial court to set aside the special circumstances and leave the guilty verdict in place. Isn't that correct? In the alternative. Sure. I got it. I got that part. But you asked the trial judge to do that. Would you have then taken an appeal from the motion that he had just granted in your favor and told the California Supreme Court there was a violation of the Sixth Amendment to have granted the motion you asked for? Would I have taken that appeal? I would have taken that appeal, but that's not the situation we find ourselves in. The situation we find ourselves in is the jury's entire verdict was set aside. To say that any part of their verdict remains would be to ignore their verdict. Their verdict is loud and clear. They found that he was the shooter. They said it twice. They have true findings saying that he's the shooter at 2ER16, 2ER17. So we cannot ignore that. And the concurrence is that the jury's entire verdict was set aside. Then why did you ask the trial court to set aside the special verdict? Again, I did not ask for that. That was not your name. I understand Mr. Taylor's counsel at the time. Why did Mr. Taylor ask the trial court to set aside the special circumstances if that would have been Sixth Amendment error to have asked the trial court to do that? Because attorneys make mistakes all the time. And it's like asking for a Porsche or a Volkswagen. If you won't give me a Porsche, I'll take a Volkswagen. It's better than nothing, better than walking through the desert. I mean, it's in the alternative. You then don't go to the Supreme Court and say it's a constitutional error to have awarded us a Volkswagen. Well, if we could talk about this case instead of a hypothetical. It's not a hypothetical, counsel. It's in the record. It's what you asked the trial court to do. And you got the remedy that you asked for. I mean, it borders on invited error. Well, the invited error is really what the people did in this case. And what the people did, and I give them credit for half doing the right thing. But to say that they completely did the right thing and are being punished for it is incorrect. The right thing would have been in 1999 when they wrote the letter to the California Department of Corrections and said, okay, we have to set aside the shooter verdict. We know he's innocent of that. When he came back for he should have come back for resentence, not for resentencing, but for a new trial. So by being half good, I don't think the State is being punished. And when the dissent talks about this huge delay and maybe he can't be retried at this point, that's not his fault. He's been trying since 1999, since 1996. Whose fault is it that the truth wasn't known at trial? Well, because the State's? We don't have a requirement that defendants take the stand. But he knew and he elected a high risk defense, hoping to persuade the jury he wasn't there at all. He did. Who in the courtroom knew the actual facts and didn't come forward? Was it the State? He did, but we don't punish defendants. I understand that. But did the State know the actual facts? Is there any actual mistake or error made by the prosecution here? No, there's not at trial. There's no trial error. Did the trial court make any error? There's no trial error. So neither the prosecution nor the trial court made a mistake? Correct. But the prosecutor, as he said in his 1999 letter and in his 2005 letter, there's a United States Supreme Court case, In re Sicarius. And in re Sicarius says that prosecutors do have an obligation to correct inconsistent verdicts. It would be manifest injustice for a prosecutor to try one person as the shooter and then try another person as the shooter. The prosecutor and the investigating agents and every single prosecution person on this case who looked at this case was convinced, completely convinced, that Mr. Taylor was not the shooter, so convinced that they went after Mr. Hayes, they tried Mr. Hayes. That didn't work out. He got an acquittal because, of course, there's reasonable doubt when first the witnesses are saying one guy's the shooter and then they're saying another guy's the shooter. That is unfortunate. That is a travesty that the shooter is free. But that's the price we pay for our wonderful system of criminal justice, that it's better that ten innocent men go free than one 10 yeah, 10 whatever the saying is. You know what the saying is. Ten guilty men go free than one innocent man be put in jail. And I'm not saying that Ronald Taylor is completely innocent of everything. Of course not. He was involved in a string of robberies with Mr. Hayes. He admitted that. He admitted everything. Decades have gone by. We're coming up on 30 years. So there's – I don't think there's really a windfall. I mean, he's going to be up for parole in 2018, but he probably won't get paroled the way things worked out. He deserves a new trial. Speaking of our wonderful system of justice, this is an AEDPA case. This is not an AEDPA case, respectfully. It was not an AEDPA case. No, Your Honor. It was filed earlier then. It wasn't filed earlier. It would – AEDPA would apply, but for 2254d deference to apply, there's a quid pro quo. For us to defer to the States and say we're going to let the States deal with this first, the States have to have an adjudication on the merits. In this case, as the Attorney General concedes, there was no adjudication on the merits. So there is no deference. There is no bending over. This Court reviews this case. This Court reviews this case de novo. So unlike many cases where the Ninth Circuit gets reversed, this isn't one of those 2254d cases. So we're not going to get reversed no matter what we do? Well, I think the prudent thing – even though I firmly believe that it's structural error because I kept trying to fit a round peg into a square hole and see how does this work with harmless error, I think the prudent thing for the Court to do would be to – I mean, whether or not you want to find there's structural error, I think it is. But to also – What do we do with Frost? I'm sorry? What do we do with Frost? We've had an uneven track record with the Supreme Court when we declare structural error. Or evenly – I suppose it's actually been consistent. We get reversed every time we find structural error. Right. I do believe that the Supreme Court is narrowing structural error. And, I mean, when you look at Arizona v. Fulminante and what it says and how the structural error test should be applied, this should be structural error. I mean, suppose that the judges had instructed the jury erroneously that he could be found guilty as the shooter whether or not he actually had the weapon in his hand when the robbery was committed. That would be error, constitutional error in the instruction. But doesn't that fall right within Hedge Path that we would apply Breck v. Abramson and determine whether the constitutional error was harmless beyond a reasonable doubt? Yes. And under Hedge Path, as this Court did on remand from the Supreme Court, you look at the jury instructions, the evidence, and the verdict. The verdict is the most important thing. And also under Nutter, you look at the verdict. You don't strip the whole away and ignore – But in my hypothetical, the verdict is based on an erroneous instruction, is it not? Right. So that would be an instructional error case. This is not an instructional error case. But yeah, under an instructional error case, you can look at would there be another way that they could have found him guilty. And I've given you one, which is the aiding and abetting, and the murder occurs during the commission of the crime that he's aiding and abetting. Right. I think it would be, whether structural or Brecht analysis, it would be a reversal. Because if the judge is saying, you could find him the shooter even if he's not the shooter, well, that's clearly erroneous and that's not the law. And I don't know how that could be harmless. The problem, though, is that it's felony murder. And in California, as in many states, it doesn't matter whether he's the one who pulls the trigger or not. If the jury finds that the death occurred during the commission of the robbery that he participated in, we punish him as a principal whether or not he fired the fatal shot or not. If they prove aiding and abetting. And the California Supreme Court, for a while, the law was different. But the California Supreme Court has recently, you know, stated that you have to have the specific intent of the crime. But aiding and abetting is simply a theory of liability. It's not a separate substantive crime. Correct. So why can't we find from this record that there was sufficient evidence, including the admissions that he made after the trial, to show. Again, this isn't a sufficiency issue. And People v. Perez. But why isn't he liable alternatively under the theory of aiding and abetting, even though the jury relied on the erroneous theory urged by the state that he was the shooter? People v. Perez says that the shooter, the principal can't aid and abet himself. So since the principal can't aid and abet himself, they couldn't have found that he was the aider and abetter. They were also instructed. But we know that he wasn't the shooter. So now we know that he actually did aid and abet the shooter. No, we don't know that. Was not himself. We absolutely do not know that. We don't know that he was not the shooter? You just said we know that he aided and abetted. I believe that's what you said. And we do not know that he aided and abetted. Counsel, I'm looking at 2E-R61, which is the verdict from the jury. And I just want to be sure I understand what you're relying on. There is, beginning on line 7, that the jury finds that Taylor personally used a firearm. Now, is that the same thing as the as being the shooter of the victim? Your Honor, I or another provision that you're relying on? Your Honor, are you looking at 2E-R16? 61. 2E-R61. I would refer the Court to 2E-R16 and 2E-R17. And if the Court doesn't have that handy, I'll look at 61. The Court's referring to 2E-R61? 2E-R61, line 7. We further find that the commission and so forth personally used a firearm. Now, is that what you're relying upon to establish a special verdict that Taylor was the shooter? That, and that's just what the court reporter, that's actually, I think that's what the court reporter typed down. But on page 2E-R16 and 2E-R17 is the actual verdict form. And on the actual verdict form, the jurors wrote that they find him guilty of first-degree murder. We further find that the murder of Lewis Lim was committed by defendant. And we find that special circumstance true, that he's the one who killed him. And we further find that the murder was committed by? Yeah. The murder was committed by Ronald Taylor. And we further find in the commission, in the attempted commission of that offense, that he personally used a firearm. We find that to be true. So that's on 2E-R16. And then on 2E-R17. Okay, but using a firearm and discharging it, killing a victim, is not necessarily the same thing, or is it? They specifically found that he was the shooter, that he used the firearm and he's the principal. I know he used the firearm, it's said right on page 61. So there's only two assailants. One is the getaway driver guy who collides into the woman, and the other guy is the shooter. So the shooter is the one who personally used a firearm. Why do we have to conclude that he collided when the jury convicted him on the theory that the waitress was actually running out of the restaurant out of fear and in order to summon help? Don't we view the evidence here, the facts in the line most favorable for the prosecution? No, Your Honor, this is not a sufficiency of the evidence case. I'm saying that, but we have to look at the record, and I don't see, I mean, I see an argument that it was a collision, but I don't find it to be very believable, and apparently the jury didn't either. This court would have to find, beyond a reasonable doubt, that the jury found he was an aider and abetter. We know the jury did not find he was an aider and abetter. They found that he was the shooter. That's the end of the story. We know that they found him guilty of the crime of attempted murder, or attempted robbery, because that was a separate count with which he was charged. We cannot erase the verdict. It says he was the shooter, and that's what the jury found. Is the answer to my question yes, he was in fact convicted by the jury on, I believe it's count two, of attempted robbery? I believe the answer is yes. Yes, as the shooter. Oh, that's not what count two charges. Count two charges the crime of attempted robbery, which is separate and apart. With personal use of a firearm. The allegation is attached. Right. So it shows that they found that he committed the crime by being, by personally using a firearm. So he was in fact convicted of attempted robbery. With personal use of a firearm. You can't ignore that part of the verdict. You're trying to ignore it. And you're trying to ignore the fact that he was convicted of the attempted robbery. No, I'm not. But I'm not pulling it apart and trying to split it apart and divide and conquer. Of course you are. You're trying to say that he couldn't be guilty of attempted robbery because of this problem with the firearm. But the problem with your argument is he could be convicted of attempted robbery, whether or not he had a gun or not, if the jury found that he was there and that he was acting with intent to further the robbery. The jury's verdict is mutually exclusive with aiding and abetting. The jury found he was the shooter and a shooter cannot aid and abet his own crime. Your point really is not what he could have been convicted of, but what he was convicted of. And you're saying he was convicted of attempted robbery with a firearm. With a firearm. That's correct. And I think it's noteworthy that when my colleague and friend writes that there is support in the record for the conviction, the cites are to the California Court of Appeal opinion, the prosecutor's closing argument, and the R&R. There are no citations to the record where that would support an inescapable finding that the verdict was that he was an aider and abetter. And I would like to reserve my six minutes, if I may. Good night. We'll hear from the state. May it please the court, Deputy Attorney General Eric Reynolds for Respondent. Your Honor, Petitioner is not entitled to relief in this case because there was no miscarriage of justice here. That's for three reasons. First, we do not concede that there was a federal constitutional error here. We had simply the trial court striking a special circumstance and an enhancement, but the valid remaining underlying convictions, he was properly sentenced on those to the term of 25 to life. Counsel, let me ask a threshold question. I noticed that the district court treated this as an AEDPA case. Yes. And somewhere between the district court decision and the decision of our three-judge panel, the state appears to have changed its position. Why does the state take the position now this is no longer an AEDPA case? Looking back at the time that I did the briefing in the Ninth Circuit, I concurred with the interpretation of Yeltsin look-through. If I was to do the briefing now, I would not reach that same concurrence and wouldn't necessarily say that AEDPA doesn't apply. But what's the rationale? I don't understand. Several years ago, I don't recall exactly why in my interpretation and looking at the cases why I concurred with the interpretation of Yeltsin at that time. Now, looking at Yeltsin again in the cases subsequent, I think Yeltsin would not apply and that the review would be based on the Supreme Court's summary denial of the subsequent habeas petition, the habeas petition that was filed after the petition was submitted. And that's not entitled to deference? Again, in my position, if I was to brief now, I would say, yes, that is entitled to deference. At the time we briefed this, I came to the idea that I was going to say that it's  I think that was wrong. I'm sorry. I'm totally confused. What is the State's position today with respect to why this shouldn't be regarded as an AEDPA case? No. The State's position today would be that this is entitled to deference under AEDPA, that Richter applies to the Supreme Court's summary denial, and that AEDPA deference would be appropriate. Under either AEDPA deference In terms of the deference, are we deferring to the court of appeal or to the Supreme Court? It would be to the Supreme Court's summary denial, and that would be treated as a denial on the merits. Thank you. Under either standard, whether there's AEDPA deference or this is de novo review, there is not a miscarriage of justice here. There, even assuming there was some sort of constitutional error, the error would be subject to review under Brecht. There is no structural error here. Petitioner received a fair trial. He received due process. He received notice of the charges against him. The State continued to give Petitioner fair process even after the trial in moving as it did in taking the extraordinary steps to have him have the special circumstance and the allegations stricken and have him resentenced for the crimes that would serve justice. And the third reason is that even applying Brecht in a harmless error review, any potential error here, assuming for the sake of argument there was error, did not have a substantial and injurious effect on Petitioner's case. Mr. Reynolds, can I ask you, do I understand correctly that the California courts found that he was actually innocent of committing the murder during the course of a robbery? No. No. I — well, the special circumstance. And that special circumstance under California law could only have been found if he was the shooter. So it wasn't that the California courts found him actually innocent of felony murder. It was the special circumstance of murder. Well, if he's actually innocent of the special circumstance, how could he be guilty under a felony murder theory? Because under the special circumstance, the aider and abetter would have had to have a specific intent to kill. And in this case, on a felony murder, that is not the case. The felony murder and an aider and abetter merely has to be an active participant in the felony, in the attempted robbery in this case. And the evidence in this case overwhelmingly established there's no possible interpretation of the evidence to reach a conclusion, first, that Petitioner wasn't one of the two men that entered their chicken restaurant, and second, that the second man who acted as the lookout was not an active participant in the robbery. You had the two men shortly before the attempted robbery occurred steal a car. Shortly thereafter, they go up to this restaurant, and the two men case the restaurant. One of them goes into the restroom. The other one's sitting outside the car watching the front door. We have witness testimony as to all of this. At a certain point, the man from the restroom goes back in, followed by the lookout, who takes a position by the front door. And as soon as the shooter goes into the back of the restaurant, and when those gunshots are fired, the evidence at trial wasn't that this was a collision. The evidence at trial was that the man serving as a lookout threw that woman to the ground to prevent her from leaving the restaurant. And then the two men ran out of the restaurant and got into a car and escaped together. Roberts. That's all understood. But then he is found to be actually innocent of the allegation that he was engaged in a robbery at the time of the murder. That was the special circumstance. Right. Call it what you will. He's found actually innocent of that allegation. Correct. So now how can a felony murder theory stand? The only way he could possibly be guilty of the murder would be by aiding and abetting, not by felony murder. Isn't that right? No. Because felony murder includes not only the direct perpetrator that would be the shooter, it includes anyone who is an active participant in that attempted felony, attempted robbery under California law. It's kind of a two-separate-step analysis. And it was laid out to the jury that way in the prosecutor's argument. The jury first had to determine felony murder. And the prosecutor argued that both men, both the lookout and the shooter, were equally guilty. And the evidence established that. The second step was once they made that finding, determined if there was felony first-degree murder, the second step then is to move on to that special circumstance and make a choice. Was the Petitioner the shooter or was he the lookout? And the jury here — The shooter was a separate allegation. I'm not talking about who was the shooter. The shooting — There were two allegations they set aside. Right. Correct? One was that he was the shooter or not the shooter. I'm not talking about that one. I'm talking about the allegation that he was engaged in the commission of a robbery at the time. Yes, under California law — That he was found to have been actually innocent of. Well, under California law, and this is Penal Code section 190.2, for that special circumstance to apply, the jury would have had to find that Petitioner was — made the choice that Petitioner was the shooter. They would have had to make that finding, that Petitioner was the shooter, in order for that special circumstance to apply. The special circumstance wouldn't apply to an aid or better. That doesn't change the fact that felony murder, the underlying murder conviction, encompass both the aid or the better and the direct perpetrator. Would — could you take a look at the verdict form — Yes. — which I'm looking at, and it talks first that he's guilty of murder. Correct. And then, well, engaged in a crime of robbery. That's the second part. Correct. So what parts of the verdict form do you think are now — should now be disregarded? Basically, the same thing that the sentencing court disregarded here would be the special circumstance, which is that crime — if you don't mind, Your Honor, I'm going to grab my — Sure. So when it went back to the trial court for re-sentencing, the things that were struck by the court were that special circumstance, that the Penal Code section 190.2, which is the second thing on that verdict form. And that's where the prosecutor and the jury was instructed on this. And I have the citations. In the instructions, supplemental excerpts beginning around page 191, that talks about the underlying felony murder, where all persons who actively commit — or it talks additionally about the 800-bedder liability — are guilty of felony murder. Then there's the second finding under California law, which made it eligible for it to be a life without parole sentence, a special circumstance, if you will, under Penal Code section 192 — 190.2A17. That — and the prosecutor argued this. They had to find that Petitioner was — it wasn't that he wasn't — they were just determining whether he committed felony murder. It was determining whether or not the special circumstance applied to Petitioner's case. The felony murder arose because there was an attempted robbery, and Petitioner — both men were active lookouts, or active participants in this case, both the shooter and the lookout. So the other — the special circumstance — So just to cut to the chase. Yes. The first part — in your view, the first part of the verdict stands — Yes. — convicted of murder. And then when you get into the part about 190.2 — Correct. — and use of a firearm, those are struck, and then you get to page 2, violation of the Penal Code with respect to the felony of attempted robbery. Does that stand? Yes. And the trial court struck the special circumstance, the 190.2. It struck the additional enhancement for personal use of the firearm. However, the principal use of the firearm, which is that last one on 2E-R-16, that remained. So the trial court made no findings, made no — did nothing to the underlying conviction. It merely struck the special circumstance and the special allegation of personal use of the firearm. Taylor moved for judgment in O.V. at the end of the — before sentencing and asked the special circumstance to be struck. Would there have been anything inappropriate if the district court had — or if the trial court had granted that relief? No, Your Honor. That would have been perfectly appropriate. And I don't see how the analysis is different in this case, where it was several years later that those special circumstance and special enhancements were struck. I think it's the same result. Basically, Petitioner received the sentence that was just and that he was entitled to based on the underlying conviction. So this really amounts to a nunk-pro-tunk revisiting of the denial and a decision to grant rather than to deny his motion? I think that's a good way to look at it, Your Honor. Yes. So any error here certainly is not structural. If — assuming error, and again, not conceding there is. There was no miscarriage of justice here. Petitioner got everything he was entitled to and then some. There was no constitutional malfunction. It was quite the opposite. He received a fair trial and fair sentencing. The evidence at trial overwhelmingly established both men were guilty. The subsequent record of Petitioner's admissions reaffirmed that. He admits that he was one of the two people. He admits that he helped steal the car. He admits that they were casing restaurants. He admits that he knew the other individual had a firearm. All of these factors demonstrate beyond a reasonable doubt that the jury would have found both the lookout and the shooter guilty of felony murder. Therefore, there was no miscarriage of justice in this case. Thank you, Your Honor. Thank you, counsel. Rebuttal. So if I may, I'd like to talk about aiding and abetting. Counsel, I have to ask you, I don't believe that the Attorney General conceded, contrary to what you told us earlier, that this is not an ed to the case. Well, in their prior pleadings, they've conceded. So for the first— All right. What's your response to counsel in open court today? I think his first take on it is correct. Yields v. Nonemaker is clearly established United States Supreme Court law that says you look through unreasoned opinions to the last reasoned opinion. The California Court of Appeal opinion is reasoned. The California Supreme Court opinion is a summary denial. So you look through to the last reasoned opinion. So unless we're overruling Yields v. Nonemaker, no deference applies. So— Well, and has the Attorney General changed positions twice then? Well, no, because this—and I have experience with this. When the Attorney General remains silent regarding, you know, they just quote 2254d and quote all the cases talking about deference, but then they don't say whether or not deference is appropriate in a case. And then when asked about it, things can change at oral argument. I've had this happen before in— Is your case affected adversely if we were to find that, notwithstanding earlier positions, that AEDPA does apply to this case? In other words, can you prevail whether AEDPA applies or not? Leave it that way. Yes. But I would certainly respectfully request an opportunity to brief. If the Court's even considering finding that AEDPA applies, I would respectfully request an opportunity to brief that. But 2254d would not change the outcome because clearly established law is Sullivan. But—so we have clearly established law, but I'm not really prepared to talk about AEDPA deference today, except to say that it wouldn't change the outcome, because we do have clearly established United States Supreme Court law. In Ray Winship, Sullivan, saying that you can't just erase a verdict. You have a right to a unanimous jury verdict. And here the jurors were advised that they had to unanimously find, you know, the special circumstances. And they unanimously found that he was the shooter, which is mutually exclusive with aiding and abetting. So for aiding and abetting, they — the jury would have had to find that Mr. Taylor knew the perpetrator's unlawful purpose. They didn't find that. They would have to prove that he intended to commit, encourage, or facilitate the offense. And they would have to find that he aided, promoted, or encouraged or instigated the crime. And most importantly, they would have to find that he was the aider and abetter. And because he was — they found he was the principal, it is impossible for them to have found that he was an aider and abetter. What's your response to his answers to Judge McEwen's question where he parsed? So did the trial court do what he — the sentencing court do outlined as he walked us through the verdict? The — in 2006, the trial judge found Mr. Taylor factually innocent of being the shooter, and therefore the special circumstance that results in LWOP, the 190.2, had to go away. And the fire — the personal use of a firearm had to go away. And he didn't then say, and I, the judge, by judicial fiat, find that you aided and abetted. Instead, the judge just said, and I'm going to do exactly what the DA says, which is re-sentence you without the LWOP, and so you have life. But it left him with a robbery and a murder conviction, correct, with the striking of the special circumstances? Yeah, which is the judge finding — but the judge would have to — He didn't find anything, that's what's on the verdict form. Right. But it would have to be — but it would have to be an implicit finding, because for that you would have to ignore the jury's finding that he's the shooter. And no court has ever done that. Whenever you look at any case, whether it's structural error or harmless error, the focus is on the verdict. And a lot of times we don't know what the verdict is. Maybe they found he was an aider and abetter. Maybe they found he was the principal. We don't know and we don't care, because if one goes away, we can just assume, and we have a presumption that they relied on the other one. This case is unique because that presumption cannot apply. This case is unique because we know they found he was the shooter, and that's why this case is distinguishable from every other case. Yes, Your Honor. If the court had granted his motion for a judgment NOV, wouldn't it have then proceeded to sentence him just as it did in 2006? And you'd be here arguing ineffective assistance of counsel. Yeah, I mean, you can't — they found he's the shooter. Let's not ignore jury verdicts. I mean, a JNOV is you get rid of the verdict, the verdict, not parts of it. You don't say, I'm going to just get rid of parts of it. Well, but that procedure has been authorized under California law. A California Supreme Court case authorizes trial courts to split off the special circumstances. So there wouldn't have been anything procedurally wrong with the trial court granting the motion that Taylor's counsel made. But you'd be here under a very, very different argument here, wouldn't you? You'd be arguing — you'd have to argue that that was ineffective assistance of counsel to have made that motion. That's a pretty tough motion to win. It would be a different argument. Thank you, counsel. Your time has expired. Thank you both for your arguments today. The case just heard will be submitted for decision and will be in recess.
judges: Thomas, O'scannlain, Silverman, McKeown, Fletcher, Gould, Tallman, Clifton, Bybee, Christen, Owens